79 N.Y.2d 227 (1992)
Jews for Jesus, Inc., et al., Appellants,
v.
Jewish Community Relations Council of New York, Inc., et al., Respondents.
Court of Appeals of the State of New York.
Argued January 8, 1992.
Decided February 25, 1992.
Jay Alan Sekulow and James H. Henderson, Sr., of the Georgia Bar, admitted pro hac vice, and Eric Alan Daly, for appellants.
Aaron Stiefel and Joel Katcoff for respondents.
Judges SIMONS, TITONE, HANCOCK, JR., and BELLACOSA concur with Chief Judge WACHTLER; Judge KAYE concurs in result in a separate opinion in which Judge ALEXANDER concurs.
*230 Chief Judge WACHTLER
This appeal requires us to consider the scope of various State antidiscrimination statutes. The question in the case is whether, by circulating a memorandum critical of plaintiffs' religious activities and advocating that plaintiffs be denied access to facilities in which to conduct those activities, defendants violated statutory prohibitions against discrimination on the basis of religion.
Plaintiff Jews for Jesus, Inc., describes itself as "an umbrella and representative organization for the religious activities of [individuals] who are Jewish and profess belief in Jesus the Messiah". Defendant Jewish Community Relations Council of New York, Inc., describes itself as "an umbrella organization encompassing many of the New York area's leading Jewish organizations". The individual defendants are either officers of the Jewish Community Relations Council or members of the Council's Task Force on Missionaries & Cults.
The memorandum at issue in this case was written on the letterhead of the Task Force and was dated February 25, 1985. It reads as follows:
"MEMO
"To: Long Island Rabbis
"From: Rabbi Lawrence Colton, TFMC Steering Committee
"Re: American Board of Missions to the Jews and/or Jews for Jesus
"Recently churches on Long Island reported receiving calls from the American Board of Missions to the Jews and/or Jews for Jesus.
"The American Board of Missions to the Jews, known as Beth Sar Shalom, or the separate organization known as Jews for Jesus, are Hebrew-Christian organizations seeking to convert Jews to Christianity.
"They are trying to rent space in order to conduct an interfaith seder in your community. If that fails, then they ask Long Island churches to rent them a room, an office or any space at all.
"They hope to gain church approval on the basis that they are a `co-Christian body' sharing in the Christian mission.

*231 "Of course what they seek is the imprimatur of a recognized church group in each local community.
"PLEASE CONTACT YOUR CHRISTIAN COLLEAGUES. URGE THEM TO IMMEDIATELY DISAPPROVE OF THE AMERICAN BOARD OF MISSIONS TO THE JEWS AND OF THE ORGANIZATION JEWS FOR JESUS. IMPRESS UPON THEM HOW SERIOUS AN AFFRONT THESE HEBREW-CHRISTIAN GROUPS ARE TO THE JEWISH COMMUNITY. ASK THEM TO CHECK IN YOUR COMMUNITY TO DETERMINE IF THE AMERICAN BOARD OF MISSIONS TO THE JEWS OR JEWS FOR JESUS HAS ALREADY ESTABLISHED ITSELF.
"IF THEY CANNOT RENT SPACE IN A CHURCH, THEY MAY TRY TO RENT A CATERING ESTABLISHMENT OR A LARGE RESTAURANT, PLEASE CALL ANY SUCH PLACES IN YOUR COMMUNITY AND ASK THE COOPERATION OF THE MANAGEMENT IN NOT RENTING TO THESE GROUPS.
"PLEASE LET US KNOW OF ANY CONTACTS MADE BY THE AMERICAN BOARD OF MISSIONS TO THE JEWS OR BY JEWS FOR JESUS TO CHURCH GROUPS OR CATERING ESTABLISHMENTS IN YOUR AREA."
The record does not establish how many copies of the memorandum were disseminated or who received them. There is, moreover, no allegation that any recipient contacted restaurants or catering establishments or took any action as a result of the memorandum. Nor is there any evidence that any facility discriminated against plaintiffs as a result of the memorandum. Nevertheless, after obtaining a copy of the memorandum, plaintiffs commenced this lawsuit alleging that defendants had violated antidiscrimination provisions of the State Civil Rights Law and the State Human Rights Law (Executive Law art 15).[*] Plaintiffs sought injunctive relief and statutory damages in the amount of $100.
Defendants answered, admitting that the memorandum was sent to certain unspecified Long Island rabbis, but denying that they had violated the statutory provisions cited by plaintiffs and asserting that their conduct was in any event an exercise of speech and religion protected by the State and Federal Constitutions. After extensive discovery, defendants *232 moved and plaintiffs cross-moved for summary judgment. After initially denying the motions so that further discovery could be conducted, upon renewal Supreme Court granted defendants' motion for summary judgment dismissing the complaint, noting that plaintiffs had alleged no specific acts of discrimination resulting from the memorandum. The court concluded that the mere issuance and dissemination of the memorandum constituted free speech and was not actionable. The Appellate Division affirmed, holding that, in the absence of a showing that the memorandum resulted in one or more specific acts of discrimination, defendants' conduct was not actionable. In addition, the court suggested that dissemination of the memorandum "may be protected by the First Amendment of the United States Constitution." (169 AD2d 461.) We granted plaintiffs' motion for leave to appeal and now affirm.
Plaintiffs rely primarily on three provisions of the Human Rights Law (Executive Law art 15). All three are found in Executive Law § 296.
Subdivision (2) (a) of that section provides that "[i]t shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation, resort or amusement, because of the race, creed, color, national origin, sex, or disability or marital status of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof".
Subdivision (13) provides that "[i]t shall be an unlawful discriminatory practice (i) for any person to discriminate against, boycott or blacklist, or to refuse to buy from, sell to or trade with, any person, because of the race, creed, color, national origin or sex of such person".
Plaintiffs concede that they were not denied access to a place of public accommodation and that defendants are not owners, lessees, proprietors, etc., of such a place and therefore do not fall within the terms of subdivision (2) (a). Thus, plaintiffs' allegations fall short of establishing a violation of that section. Nor have defendants blacklisted or refused to trade with plaintiffs. Instead, the memorandum that defendants distributed requested the recipients of the memorandum to urge others to commit such violations.
Thus, plaintiffs rely most heavily on the third relevant subdivision of Executive Law § 296. Subdivision (6) provides *233 that "[i]t shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so." Plaintiffs contend that the distribution of the memorandum aided, abetted or incited acts forbidden by subdivisions (2) (a) and (13) or, at the very least, constituted an attempt to aid, abet or incite such acts.
Defendants, on the other hand, argue that one cannot aid, abet or incite one of the prohibited discriminatory acts unless a prohibited act occurs, which plaintiffs have not alleged. They argue further that the prohibition against attempts must refer to attempts to engage in prohibited discriminatory conduct, rather than attempts to aid, abet or incite discriminatory conduct. It cannot be, defendants contend, that the Legislature intended to outlaw attempts merely to aid, abet or incite discriminatory acts but not the relatively more serious conduct (according to defendants) of attempting to engage in discriminatory practices. Plaintiffs counter that this anomaly can be avoided easily by construing subdivision (6) broadly as prohibiting both categories of attempts.
Assuming, without deciding, that plaintiffs' interpretation of subdivision (6) is correct, we conclude that defendants' conduct does not fall within its prohibitions. In our view, the Legislature did not intend to prohibit the kind of advocacy contained in the memorandum prepared by defendants.
The memorandum was not directed to restaurant owners or caterers  those in a position to carry out the unlawful discriminatory practices that were advocated. Instead, defendants addressed religious associates concerning a matter that, in their opinion, posed a threat to their religion. While the steps they proposed were inconsistent with the Human Rights Law and the Civil Rights Law, their conduct did not go beyond the proposal stage. Defendants did not provide, attempt or offer to provide assistance to those who could have denied access to plaintiffs and thus did not aid or abet, or attempt to aid or abet unlawful conduct.
Nor did defendants' conduct rise to the level of incitement or an attempt to incite. The term "incite" connotes a much closer connection between speech and action than is present in this case. Defendants' conduct here, asking associates to ask others to engage in prohibited conduct, is too far removed from the potential unlawful conduct to be considered incitement.
*234 Plaintiffs' claims based on sections 40, 40-c, 40-d, and 41 of the New York Civil Rights Law also fail. The Civil Rights Law, like the Human Rights Law, prohibits, among other things, denial of access to places of public accommodation and the denial of civil rights based on religion (Civil Rights Law §§ 40, 40-c). In addition, the Civil Rights Law establishes a private cause of action to recover a statutory penalty against those who violate these rights or who aid or incite such a violation (Civil Rights Law § 41; see also, Civil Rights Law § 40-d).
For the same reasons that defendants' conduct did not violate the similar provisions of Executive Law § 296, no violations of the Civil Rights Law have been alleged. Plaintiffs were not denied access to any place of public accommodation and the memorandum distributed by defendants cannot be said to have aided or incited such a violation.
For these reasons, summary judgment dismissing the complaint was properly granted in favor of defendants. Accordingly, the order of the Appellate Division should be affirmed, with costs.
KAYE, J. (concurring).
The Court finds no need to resolve the ambiguity in Executive Law § 296 (6) because it concludes that, under either construction, defendants' acts did not violate the law. In my view, however, plaintiff's allegations do state a cause of action under one of the two possible readings of the statute, and it is therefore necessary to resolve the ambiguity. As I would interpret the statute, defendants' construction is the preferable one, which leads me to concur in dismissal of the complaint.
Executive Law § 296 (6) provides:
"It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."
The difference centers on the meaning of the statutory words "or to attempt to do so." Plaintiff contends that these words modify "aid, abet, incite, compel or coerce," so that the law proscribes an attempt to incite discrimination. If plaintiff's reading of the statute were correct, in my opinion the complaint would survive summary judgment: the dissemination of a letter asking rabbis to contact restaurants and catering halls to urge them to deny accommodations to Jews *235 for Jesus could be considered an attempt to incite discrimination. In this respect I disagree with the majority.
Defendants would read the words "or to attempt to do so" to modify the immediately preceding clause  "the doing of any of the acts forbidden under this article." Under defendants' reading, the statute proscribes attempts to discriminate, not attempts to incite discrimination. While the majority's disposition makes extended analysis of this point unnecessary, in my view defendants' reading of the statute is the better one because of the language and structure of the subdivision. Moreover, where the choice must be made between proscribing attempts to incite discrimination and proscribing attempts to discriminate, I would conclude as a matter of statutory interpretation that the Legislature chose the latter.
It is a concern to me, however, in reading this statute that both interpretations are plausible, both attempts to discriminate and attempts to incite discrimination might, as a matter of policy, be considered important proscriptions, and because the statute is written in the disjunctive, only one of the two interpretations can be accepted. In that the majority has no occasion to reach the statutory interpretation issue in this case, a patent ambiguity in the statute necessarily remains unresolved, suggesting that it might be highly desirable for the Legislature to examine the provision and make clear whether it intended to proscribe attempts to "aid, abet, incite, compel or coerce," or attempts to discriminate, or both.
Order affirmed, with costs.
NOTES
[*] Plaintiffs also claimed that defendants had violated State and Federal constitutional provisions and a Federal statute, 42 USC § 1985 (3). Those claims are not pressed on the appeal to this Court.