■ SHELDON WEINBAUM et al., Respondents, v MARIO M. CUOMO, as Governor of the State of New York, et al., Appellants. [631 NYS2d 825] —Order, Supreme Court, New York County (Burton Sherman, J.), entered October 13, 1993, which denied defendants' motion to dismiss the complaint for failure to state a cause of action, lack of standing, and non-justiciability, unanimously reversed, on the law, and the motion to dismiss the complaint granted, without costs. The Clerk' is directed to enter judgment in favor of defendants dismissing the complaint, without costs.

The majority of the forty-nine plaintiffs in this case are either students, staff or faculty members of the senior colleges in the City University of New York (CUNY). Although plaintiffs' complaint is directed at what it alleges is the discriminatory underfunding of CUNY's senior colleges, and not the community colleges or law school, plaintiff, CUNY Coalition of Concerned Faculty and Staff, is an unincorporated association

whose members are faculty and staff of CUNY's senior colleges, community colleges and law school.*

The defendants are various officers of State government (the Governor, the Comptroller, the Director of the Budget, the President of the Senate, the Speaker of the Assembly), and both the State Senate and Assembly, sued here as one unit, "the State Legislature" (hereinafter, defendants shall be collectively referred to as "the State").

"The heart of the complaint", as described by the IAS Court, alleges that defendants have "maintained a racial[ly] discriminatory policy and practice in [setting the level of] the financial support of the City University of New York (CUNY) compared to the State of New York (SUNY)". The IAS Court noted that it is undisputed that the student populations of CUNY and SUNY are around the same in size, that SUNY receives a larger proportion of funding from the State, that SUNY's student body is predominantly composed of anglo-caucasian students, and that CUNY's student body is predominantly composed of non-anglo-caucasian students. Plaintiffs do not allege that the statistical differences in racial and ethnic composition of the two student bodies is due to any kind of purposeful or intentional State action. Rather, as the IAS Court observed, "[t]he unique diversity of the CUNY student body can be attributed to CUNY's location and to local demographics". CUNY is an urban, non-residential university situated within the boundaries of New York City, while SUNY's various campuses are mostly residential and are geographically located throughout the remainder of New York State. Rather, plaintiffs attack what they perceive to be a funding differential of the two systems by the State as being impermissibly based on race. While they acknowledge that the State makes a "lump sum appropriation" for each college of both systems, plaintiffs attempt to support their contentions by using an "appropriation per full-time enrolled student" formula. Specifically, the complaint sets forth six causes of action for declaratory and injunctive relief, based upon alleged violations of plaintiffs' rights to equal protection under the New York State Constitution, Civil Rights Law, and Education Law.

On appeal, defendants contend, *inter alia,* that the IAS Court erred in denying their motion to dismiss for failure to state a

---

* The senior colleges at issue are Baruch College, Brooklyn College, City College, Hunter College, John Jay College of Criminal Justice, Herbert H. Lehman College, Medgar Evers College, New York City Technical College, Queens College, College of Staten Island, York College, and the Graduate School of CUNY.

cause under CPLR 3211 (a) (7). Upon a careful review of the complaint, and having accepted as true the factual averments of the complaint and accorded the "plaintiffs the benefit of all favorable inferences which may be drawn from their pleading, without expressing our opinion as to whether they can ultimately establish the truth of their allegations before the trier of fact" (*Campaign for Fiscal Equity v State of New York*, 86 NY2d 307, 318), we conclude that the IAS Court erred in rejecting defendants' claim that the complaint does not state a cause of action under the State Constitution's guarantee of equal protection, the Civil Rights Law and the Education Law.

In the context of a case challenging the State's funding of public education at the primary through high school level, the Court of Appeals reiterated that under New York law, "an equal protection cause of action based upon a disproportionate impact upon a suspect class requires establishment of intentional discrimination" (*Campaign for Fiscal Equity v State of New York, supra*, at 321). While we agree with the IAS Court that if the Executive or Legislative branches of government were to maintain a policy or practice of disparate funding of State financed higher education institutions motivated by racial bias such policy or practice would be prohibited by the State Constitution's Equal Protection Clause, we do not agree with its determination that such a claim has been adequately set forth in this complaint.

As set forth in the complaint, the two systems are funded by lump sum appropriations. It is not alleged that this is done in a facially discriminatory manner. Rather, it is alleged that through facially-neutral appropriations, the State maintains disparate levels of funding and educational facilities per full-time enrolled student. The plaintiffs claim, in the introductory paragraph of their complaint, that this difference is "based solely on disparate racial composition of the student bodies in the CUNY and SUNY system". While this general language can arguably be read as an allegation of purposeful and intentional discrimination by the State, examination of the remaining fifty pages of the complaint reveals that plaintiffs' factual allegations, when accepted as true and given the benefit of all favorable inferences, establish at most a disparate impact in funding, and not an illegal discriminatory purpose. In short, the complaint does not set forth any facts tending to show that in making their decisions regarding funding of the two systems, the defendants acted with a discriminatory purpose or were motivated by the race or ethnic background of the student bodies.

It is not alleged, even in a conclusory fashion, that the State maintains two different higher education systems with access, opportunity and admission being restricted based on race or ethnicity. Therefore, even accepting for the sake of argument plaintiffs' "appropriation per full-time enrolled student" formula as the proper method of determining funding equity between the two systems, the Equal Protection Clause would still not require the State to equalize the two systems which, for demographic reasons not attributed to defendants, have developed student bodies unequal in their racial and ethnic composition (*Freeman v Pitts*, 503 US 467).

For these reasons, the IAS Court should have granted defendants' motion to dismiss those causes of actions that are premised on an alleged violation of plaintiffs' right to equal protection under the New York State Constitution.

Plaintiffs' statutory causes of action fare no better. Section 40 of the Civil Rights Law is a "public accommodations" statute which is essentially designed to ensure that the covered facilities, which include colleges and universities, are fully and equally open to all persons without regard to such factors as race, color, creed, or national origin. It is an access statute. Thus, as defendants correctly argue, the failure of the complaint to allege that any of the plaintiffs were denied access to SUNY's "accommodations, advantages, facilities and privileges" based on their race, color, creed or national origin, means that the plaintiffs have not alleged facts which would, if true, afford them the protection and relief provided by the statute. We find nothing in the statute which can be interpreted as guaranteeing that two different "public accommodations" must be equal. In short, it is wholly inapplicable to the case at bar.

The alleged violation of Civil Rights Law § 40-c must also be dismissed, as plaintiffs point to no particular "civil right" which has been denied them based on race or other protected basis. As the court below correctly recognized, there is simply no "right", constitutional or statutory, to a State financed higher or college education.

Finally, we agree with defendants that Education Law §§ 6201 and 6221 do not create private rights of action under those statutes. Indeed, by failing to brief this issue, plaintiffs have essentially conceded same.

In light of the above, we need not reach defendants' other contentions. Concur—Ellerin, J. P., Wallach, Kupferman, Asch and Mazzarelli, JJ.