

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-15-2008

# Williams-Murray v. Anthropologie, INC.

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-1735

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Williams-Murray v. Anthropologie, INC." (2008). *2008 Decisions.* Paper 648.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/648

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

___________

No. 07-1735

___________

CARMEN WILLIAMS-MURRAY,
Appellant

v.

ANTHROPOLOGIE, INC., A WHOLLY OWNED
SUBSID. OF URBAN OUTFITTERS; JANE DOE

____________________________________

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 05-05749)
District Judge: Honorable Cynthia M. Rufe

____________________________________

Submitted Pursuant to Third Circuit LAR 34.1(a)
MARCH 20, 2008

Before: MCKEE, SMITH AND CHAGARES, CIRCUIT JUDGES.

(Opinion filed: August 15, 2008)

___________

OPINION

___________

PER CURIAM

Appellant, Carmen Williams-Murray, appeals pro se from the District Court's dismissal of her complaint. For the reasons that follow, we will affirm.

I.

On August 5, 2005, Williams-Murray, who is African-American, entered Anthropologie Inc.'s ("Anthropologie") retail store on Fifth Avenue in New York to exchange merchandise that she had previously purchased. While she browsed the items in the store, an employee identified as "Jane Doe" shadowed her. Williams-Murray was the only African-American customer in the store at that time. When Williams-Murray had selected a new item and approached the check-out register to make her exchange, Doe followed her to the register and inspected the receipt from her previous purchase. Because Williams-Murray felt that she was being treated unfairly on account of her race, she stated that she wanted to file a complaint against Doe. In response, Doe explained that she "just thought [she] saw something is all." When pressed as to what she thought she saw, Doe allegedly retorted, in the presence of third parties, "You must have done something, otherwise why are you getting so upset?" Williams-Murray completed her exchange and left the store.

On October 31, 2005, Williams-Murray filed a pro se complaint in the United States District Court for the Eastern District of Pennsylvania[1] against Anthropologie in connection with the events of August 5, 2005. In the complaint, she alleged that Doe's conduct violated: (1) Title VII of the Civil Rights Act of 1964; (2) 42 U.S.C. § 1981; and

[1]Murray-Williams filed the complaint in the Eastern District of Pennsylvania because, according to the complaint, Anthropologie is incorporated in Pennsylvania and its principal place of business is in Philadelphia.

(3) Section 40 of the New York Civil Rights Law. Williams-Murray further alleged that (4) Anthropologie negligently hired, trained, retained and/or supervised Doe; and that (5) Anthropologie was liable for Doe's slanderous remarks.[2] Anthropologie moved to dismiss the complaint on the ground that Williams-Murray failed to state a claim upon which relief could be granted. See Fed. R. Civ. P. 12(b)(6). On February 27, 2007, the District Court entered an order granting Anthropologie's motion and dismissing the complaint.[3] The present appeal followed.

II.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. The standard of review for a dismissal under Federal Rule of Civil Procedure 12(b)(6) is plenary. Atkinson v. LaFayette Coll., 460 F.3d 447, 451 (3d Cir. 2006). In considering a motion to dismiss pursuant to Rule 12(b)(6), the District Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and

---

[2]Williams-Murray subsequently sought permission to amend her complaint, but the District Court denied that motion, along with several other outstanding motions, as part of its February 27, 2007 order dismissing the complaint.

[3]In articulating the legal standard for dismissal pursuant to a Rule 12(b)(6) motion, the District Court employed the "no set of facts" language that was later rejected by the Supreme Court in Bell Atlantic Corp. v. Twombly. See 127 S. Ct. 1955, 1968-69 (2007) ("retiring" the statement in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that a complaint may not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"); Phillips v. County of Allegheny, __F.3d__, No. 06-2869, 2008 WL 305025, at * 1 (3d Cir. Feb. 5, 2008). The District Court's application of the "no set of facts" standard does not affect the outcome here.

determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, __F.3d__, No. 06-2868, 2008 WL 305025, at * 1 (3d Cir. Feb. 5, 2008) (internal quotations omitted). For the reasons explained herein, we will affirm the District Court's dismissal of Williams-Murray's complaint.

III.

A. Choice of Law

Williams-Murray first argues that the District Court erred in failing to perform a choice of law analysis under Erie Railroad v. Tompkins before proceeding to evaluate her claims under New York law. See 304 U.S. 64 (1938). While Williams-Murray is correct insofar as the District Court's opinion did not contain a lengthy discussion of its choice of law analysis, the District Court nonetheless appears to have conducted such an analysis. Specifically, the District Court concluded that, "[b]ecause this action is based upon facts that occurred in New York, the Court will evaluate Plaintiff's state-law claims under New York state law." (App. 3.) Accordingly, Williams-Murray's objection is unfounded.

B. Section 40 of the New York Civil Rights Law

Next, Williams-Murray claims that the District Court erred in dismissing her claim under section 40 of the New York Civil Rights Law, N.Y. Civ. Rights Law § 40 (McKinney 2006). The District Court found that Williams-Murray failed to state a claim under section 40 because that statute "provides a cause of action for denial of access to

public accommodations, not for alleged discrimination that takes place within places of public accommodations." (App. 7.) Williams-Murray disagrees, arguing that section 40 guarantees equal treatment "in" places of public accommodation.

The District Court's interpretation of section 40 as an "access statute" is correct. The New York Appellate Division has explained that section 40 is "designed to ensure that the covered facilities . . . are fully and equally open to all persons without regard to such factors as race, color, creed, or national origin." Weinbaum v. Cuomo, 631 N.Y.S.2d 825, 828 (N.Y. App. Div. 1995); see also Jews for Jesus, Inc. v. Jewish Cmty. Relations Council of New York, Inc., 590 N.E.2d 228, 232 (N.Y. 1992) (explaining that plaintiffs had not established violation of section 40 because they had not been denied access to any public accommodation). Given that Williams-Murray was at no time denied access to the store, service in the store, or any other amenities that the store offers its customers, the District Court correctly concluded that she failed to state a claim under section 40.[4]

Williams-Murray also argues that the District Court should have certified its

---

[4]In support of her argument, Williams-Murray relies on a settlement agreement entered into between the New York Attorney General and Macy's Department Store. See N.Y. v. Macy's E., Inc., 2005 U.S. Dist. LEXIS 1037 (S.D.N.Y. 2005). Williams-Murray believes that this agreement shows that section 40 provides a cause of action for "racial profiling" because the Attorney General relied in part on section 40 in this action, and the "chief legal officer of [the] State [is] presumably aware of state laws applicable to [a racial profiling] claim." (Appellant's Brief, at p. 4.) Contrary to her contention, however, this settlement agreement does not provide any authority whatsoever on the applicability of section 40 to Williams-Murray's claims.

questions concerning section 40 to the New York Court of Appeals. However, the District Court does not have the authority to certify questions of New York law. See N.Y. Comp. Codes. R. & Regs. tit. 22, § 500.27 (stating that the Supreme Court of the United States, any United States Court of Appeals, or a court of last resort of any other state may certify questions of law to the Court of Appeals). Therefore, this claim lacks merit.

C. Slander

Williams-Murray also claims that the District Court erred in dismissing her slander claim. According to Williams-Murray, Doe's remark that she "thought she saw something," and her accusation that Williams-Murray "must have done something, otherwise [she] wouldn't be so upset," constitute slander per se under New York law.[5] The District Court found that Williams-Murray's allegations did not support a claim for slander per se because Doe's alleged remarks do not fall within any of the four categories of slander per se under New York law. See Albert v. Loksen, 239 F.3d 256, 271 (2d Cir. 2001) (stating that statements that are slanderous per se are those that charge the plaintiff with a serious crime, injure the plaintiff's business reputation, imply that the plaintiff has a loathsome disease, or impute unchastity to a woman).

For substantially the same reasons given by the District Court, we agree. First, to the extent that Doe was insinuating that Williams-Murray was attempting to shoplift items

[5] In her opposition to Anthropologie's motion to dismiss, Williams-Murray clarified that her claim was one for slander per se as opposed to slander. (App. 60, at ¶ 16.)

from the store, such an accusation does not rise to the level of a "serious crime." See Liberman v. Gelstein, 605 N.E.2d 344, 347 (N.Y. 1992) (explaining that the law distinguishes between relatively minor offenses and more serious crimes such as murder, burglary, larceny, arson, rape, and kidnapping). Moreover, Doe's statements cannot reasonably be construed as injuring Williams-Murray's profession, implying that she has a disease, or accusing her of unchastity. See Albert, 239 F.3d at 271. The District Court thus properly concluded that Williams-Murray failed to state a claim for slander per se.

D. Motion to Amend the Complaint

Finally, Williams-Murray claims that the District Court erred in failing to give her an opportunity to amend her complaint to allege a violation of section 296 of the New York Human Rights Law, and to add a claim for intentional infliction of emotional distress. We have held that when a complaint is dismissed for failure to state a claim upon which relief may be granted, a plaintiff should be granted the opportunity to amend her complaint unless amendment would be inequitable or futile. Grayson v. Mayview State Hosp., 293 F.3d 103, 106 (3d Cir. 2002).

We conclude that it would have been futile for the District Court to permit Williams-Murray to amend her complaint. First, section 296 of the New York Human Rights Law, which in large part mirrors section 40 of the New York Civil Rights Law, provides a cause of action for denial of access to public accommodations. Given that, as discussed above, Williams-Murray was not denied access to, or services by,

Anthropologie, her allegations would not state a claim under the New York Human Rights law were she given the opportunity to amend. See Jews for Jesus, Inc., 590 N.E.2d at 232 (noting that plaintiffs did not state a claim under section 296 of the New York Human Rights Law because they were not denied access to a place of public accommodation).

Similarly, it would have been futile for Williams-Murray to add a claim for intentional infliction of emotional distress. Under New York law, "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress." Murphy v. Am. Home Prods. Corp., 448 N.E.2d 86, 90 (N.Y. 1983) (internal quotations omitted). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. (quoting Restatement of Torts, Second, Comment d). Simply stated, the facts alleged by Williams-Murray—that Doe followed her around the store, scrutinized her receipt, and insinuated that she had "done something"—fall far short of this standard. Therefore, adding a claim for intentional infliction of emotional distress would not have saved Williams-Murray's complaint from dismissal.

IV.

For the reasons set forth above, we will affirm the judgment of the District Court.