OPINION OF THE COURT
Bellacosa, J.
The sole issue on this appeal is whether the denial to appellant Archbishop Walsh High School of membership in Section VI of the New York State Public High School Athletic Association, Inc. constitutes a deprivation of appellant’s right to equal protection of the law under the Fourteenth Amendment of the United States Constitution. Both courts below found no such violation, and Walsh appeals to this Court as of right on constitutional grounds (CPLR 5601 [b] [1]). In particular, Walsh claims that Section VI failed to accord it equal protection of laws when Section VI denied Walsh membership in the Athletic Association based on an insufficient number of favorable votes in a member referendum on Walsh’s application. The voting mechanism is the culminating step of the qualifications imposed on all nonpublic school applicants for membership and the essential feature of appellant’s constitutional challenge.
*135 The Archbishop Walsh High School, located in Cattaraugus County, New York, is a member of that county’s High School Athletic Association, one of the leagues sanctioned and regulated by Section VI. Section VI is the overarching, independent, not-for-profit corporation affiliated with the New York State Public High School Athletic Association. The State Association is also a not-for-profit corporation organized under the aegis of the New York State Commissioner of Education (see, 8 NYCRR part 135) to provide an umbrella organization under which secondary schools may operate and coordinate their interscholastic athletic programs. Section VI currently has a membership of 93 public schools located in the eight western counties of New York State. No nonpublic school has ever been granted membership in Section VI.
In August 1993, Walsh applied for Section VI membership. At that time, the Section VI constitution did not provide for the admission of nonpublic schools, but did recognize a category of "friends and neighbors” schools. Walsh’s application to Section VI was accepted under that special category and it met the pertinent special admission procedures, including the submission of a completed application and a presentation to the Section VI Athletic Council. Ultimately, Walsh failed to obtain approval by a majority of votes from Section Vi’s member schools, and for that reason alone its application was denied. It should be emphasized that this is a quite ordinary majority ballot system among membership organizations. To the extent that it is at all relevant in an equal protection calculus, as contrasted to a due process assessment not properly raised in this case, the voting procedure on this record is neither secret nor some single or block vote exclusionary subterfuge.
Walsh’s declaratory judgment action rests solely on a claimed deprivation of its right to equal protection under the Fourteenth Amendment of the United States Constitution. Upon the parties’ respective motion and cross motion for summary judgment, Supreme Court granted Section Vi’s motion for summary judgment and dismissed the complaint. The Appellate Division technically modified the judgment by converting it into a declaration that Section Vi’s referendum requirement did not deprive Walsh of equal protection of the law. We agree and affirm the order.
 Preliminarily, everyone agrees that the actions of Section VI constitute State action, and Section VI must, therefore, comply with applicable equal protection standards and not *136 deny Walsh its rights in that regard (see, Matter of Eastern N. Y. Youth Soccer Assn. v New York State Pub. High School Athletic Assn., 67 NY2d 665, 667; 8 NYCRR part 135; see also, Matter of Caso v New York State Pub. High School Athletic Assn., 78 AD2d 41, 46; Clark v Arizona Interscholastic Assn., 695 F2d 1126, 1128, cert denied 464 US 818). The disposition of this case turns on the standard of judicial review applicable to the controversy. We are unanimous that the rational basis standard governs and all but one of us conclude that the standard is satisfied in this case.
Although education, and by related extension participation in a publicly sponsored and supported interscholastic sports association, is not in and of itself a fundamental substantive right under the Constitution (Albach v Odle, 531 F2d 983, 984-985), the right to equal protection of the laws is fundamental and explicitly safeguarded (San Antonio School Dist. v Rodriguez, 411 US 1, reh denied 411 US 959; O’Connell High School v Virginia High School League, 581 F2d 81, 84, cert denied 440 US 936). Absent an allegation of discrimination based on a suspect classification elevating judicial review beyond the rational basis standard, Section VFs State action must be analyzed to determine whether it "rationally furthers some legitimate, articulated state purpose and therefore does not constitute an invidious discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment” (San Antonio School Dist. v Rodriguez, supra, at 17; see, Heller v Doe, 509 US 312, 318-321). Under this rational basis standard, no deprivation of equal protection of the law occurs so long as there is a plausible reason for the nonsuspect classification of the aggrieved complainant (Federal Communications Commn. v Beach Communications, 508 US 307, 313-314; Nordlinger v Hahn, 505 US 1, 11).
Walsh would have the courts apply the higher "strict scrutiny” standard to its claim because, it argues, as a Catholic high school it fits within a suspect classification that qualifies for protection under a heightened standard of judicial review. No equal protection deprivation as among nonpublic schools is alleged or involved in this case. Walsh’s narrowly targeted argument is untenable because the unequal treatment of which it complains is discrimination between public and nonpublic schools, not anything of a religious nature and not even anything within the entire class of nonpublic schools (cf., Matter of Di Maggio v Brown, 19 NY2d 283, 290, citing Oyler v Boles, 368 US 448, 456).
*137 Notably, Walsh’s due process claim — that the membership referendum is a "secret ballot” that is inherently biased against schools like Walsh — is unpreserved. Thus, the legal implications of any belated due process complaint cannot be considered, nor may we even address the accuracy of the asserted factual underpinnings of the theory.
The precise focus of this case and appeal is an examination on this record to determine whether Section Vi’s admission requirements for nonpublic schools reflect a rational basis related to the purposes of the organization sufficient to survive Walsh’s equal protection challenge. Because Section Vi’s denial of membership to Walsh was predicated on the lack of a favorable majority of member votes, Walsh’s discrimination claim must be resolved solely on the rationality of Section Vi’s ballot requirement. Walsh and the dissent acknowledge that Section VI has no constitutional obligation to open its membership to anyone other than public schools in the first instance. The argument is then, nevertheless, cast that once Section VI opens its membership opportunity to others, it cannot rationally justify the members’ vote prerequisite for all nonpublic schools, while allowing automatic membership for all public schools.
Section VI, on the other hand, advances a number of concrete justifications for using specific membership qualifications for nonpublic schools, including an open membership ballot based on a majority vote. It states that because it is a voluntary organization of only public schools that necessarily have open community enrollment, it has an interest in the "character of competition that such community identity and non-selectivity engender” among member schools. This goal would be jeopardized by unlimited or unqualified membership admittance of private schools that are able to offer financial incentives and other differentiating admission incentives to their students. Section VI argues that this distinctive feature could cause competitive imbalances among schools, since public schools could not offer such benefits.
Section VI also points to the fact that, unlike public schools, nonpublic schools can draw students from a wider geographic area and, thus, skew the fair athletic balance among schools and regions. The diminution of community spirit among public schools — possibly resulting from the loss of identity that public schools usually enjoy through traditional community-based rivalries, especially in competitions such as championships — is part of the justification for membership criteria imposed on nonpublic school applicants that wish to enroll in Section VI. *138 There is no absolute ban, nor is there automatic entry. Rather, the screening process includes a membership vote applicable to all nonpublic school applicants as a method to deal with Section Vi’s legitimate concerns. The dissent raises the spectre of per se invidious and arbitrary discrimination by the mere use of an open, majority ballot system. It thus rejects as spurious the most elemental hallmark of the democratic process and one of associative groups — a majority vote — and ignores the plaintiffs burden on this kind of constitutional attack of showing that the requirement has no rational basis.
We, on the other hand, agree with the courts below that Section Vi’s reasons sufficiently identify and demonstrate a rational basis for its special membership requirements. The constitutions of both Section VI and the State Association reflect that the primary purpose of these organizations is to provide a "central association through which public secondary schools * * * may cooperate” in organizing interscholastic athletic activities (emphasis added). Section Vi’s membership qualifications for nonpublic schools are consistent with and further the identified purposes by reasonably assuring that all member schools have the opportunity to compete on a relatively level playing field. Walsh and the dissent rely on conclusory speculation and fail to show that the justifications advanced by Section VI in response to this equal protection claim are not reasonably related to the concerns of promoting rationally rooted interscholastic athletic competition. Courts may not skeptically second-guess these proffered reasons in equal protection constitutional analysis and simply declare such a voting mechanism per se arbitrary and unconstitutional.
Moreover, the issues and concerns tendered by Section VI for promulgating its special admission requirements as to all nonpublic school members find some additional support in the determinations of other courts. Appropriate justifications designed to minimize or mitigate uneven or undesirable competition between public and nonpublic schools, especially as affected by the differentiating recruitment opportunities geared towards student athletes, have been upheld (see, O’Connell High School v Virginia High School League, 581 F2d 81, 85, supra; see also, Walsh v Louisiana High School Athletic Assn., 616 F2d 152, 160, cert denied 449 US 1124). In the Virginia High School League case, for example, the Court of Appeals for the Fourth Circuit found a rational basis for a public high school athletic association’s exclusion of all nonpublic schools, based on reasons similar to those advanced by Section VI here (581 F2d, at 87, supra).
*139 On the other hand, Walsh’s and the dissent’s extended reliance on nisi prius rulings in Matter of Friends Academy v Section VIII of N. Y. State Pub. High School Athletic Assn. (154 Misc 2d 1) and St. Augustine High School v Louisiana High School Athletic Assn. (270 F Supp 767, affd 396 F2d 224), even if they were binding at this level, is seriously misplaced and flawed. The trial court in Friends Academy, while articulating and ruling on a rational basis analysis, also referenced the St. Augustine case as support for its conclusion on a rational basis characterization. No matter how ambiguous the District Court’s description and analysis are in St. Augustine concerning the proper judicial review to be applied, the Fifth Circuit decided the case unequivocally as a preclusion from membership on racial grounds (St. Augustine High School v Louisiana High School Athletic Assn., 270 F Supp 767, affd 396 F2d 224, 228, supra). Because St. Augustine was thus unquestionably and ultimately rooted in a race-based equal protection challenge at the strict scrutiny level, the nisi prius precedents advanced in support of appellant’s argument in this respect fail and lack any persuasive value for the proper disposition of this case.
In sum, Section Vi’s membership voting requirement for the enrollment of nonpublic schools is a rational screening process on its face, addressed to the particular concerns and issues affecting its otherwise exclusively public schools’ membership roster. Finally, nothing in this record supports the assertion or speculation that this voting procedure is intrinsically arbitrary or a subterfuge masking invidious discrimination that would offend the safeguards of the equal protection of the laws of this land. Such factors would present an entirely different case and constitutional theory. Since that is not this record and this case, and because appellant Walsh has failed to show its entitlement to a declaration of unconstitutionality, we conclude that the referendum requirement of Section VI does not deprive appellant Walsh of equal protection of the laws.
Accordingly, the order of the Appellate Division should be affirmed, with costs.