■ In the Matter of KELLENBERG MEMORIAL HIGH SCHOOL et al., Appellants, v SECTION VIII OF THE NEW YORK STATE PUBLIC HIGH SCHOOL ATHLETIC ASSOCIATION, INC., Respondent. [679 NYS2d 660] —In a proceeding pursuant to CPLR article 78, *inter alia,* to annul two determinations of the respondent, both dated January 22, 1996, which denied the petitioners' respective applications for admission to the respondent, the petitioners appeal from a judgment of the Supreme Court, Nassau County (Ain, J.), entered September 23, 1996, which denied the petition and dismissed the proceeding.

Ordered that the judgment is affirmed, with costs.

The petitioners failed to demonstrate a constitutionally-protected interest in membership in Section VIII of the New York State Public High School Athletic Association (*see, Albach v Odle,* 531 F2d 983, 984-985; *Archbishop Walsh High School v Section VI of N. Y. State Pub. High School Athletic Assn.,* 88 NY2d 131, 136). Accordingly, the Supreme Court properly rejected the petitioners' procedural due process claim (*see, Jago v Van Curen,* 454 US 14; *Board of Regents v Roth,* 408 US 564).

The petitioners argue that summary disposition by the Supreme Court was premature, and that they are entitled to discovery. This argument ignores both the summary nature of a special proceeding (*see,* CPLR 408, 409 [b]; 7804 [g]; Siegel, NY Prac § 554, at 867 [2d ed]) and the petitioners' contention in the Supreme Court that the matter was ripe for summary disposition.

We have considered the petitioners' remaining contentions and find them to be without merit. Mangano, P. J., Copertino and Thompson, JJ., concur.

McGinity, J., dissents and votes to reverse the judgment appealed from and to grant the petition and remit the matter for further proceedings consistent herewith, with the following memorandum: The issue presented on this appeal is whether the denial to the appellants Kellenberg Memorial High School (hereinafter Kellenberg) and Chaminade High School

(hereinafter Chaminade) of membership in the respondent, Section VIII of the New York State Public High School Athletic Association, Inc. (hereinafter Section VIII), constitutes a deprivation of the appellants' constitutional rights. The majority, citing *Archbishop Walsh High School v Section VI of N. Y. State Pub. High School Athletic Assn.* (88 NY2d 131), concludes that the appellants' contentions are without merit and affirm. In my view, an analysis of *Walsh (supra)* indicates that the cases are distinguishable, and, accordingly, I dissent.

The appellant Chaminade High School, located in Nassau County, operates a not-for-profit all-male high school with an approximate enrollment of 1,545 students. The appellant Kellenberg Memorial High School, also located in Nassau County, operates a not-for-profit coeducational middle school and high school with an approximate enrollment of 1,600 to 1,700 students.

The respondent is an affiliate of the New York State Public High School Athletic Association, which is a not-for-profit corporation organized under the aegis of the New York State Commissioner of Education and serves as the organization which coordinates interscholastic athletic programs in the State's public secondary schools. Insofar as relevant here, the constitution of the New York State Public High School Athletic Association provides that "[n]on-public schools may petition and be accepted for full membership". The respondent's constitution provides that "[i]n accordance with the State Association's constitution as interpreted by the court, approved Friends and Neighbors schools may apply and become members of Section VIII if approved by a referendum postcard vote of the member schools of Section VIII". The admission procedures adopted by the respondent for admitting non-public schools to membership include a timely application with an invitation to the applicant to attend a meeting called by the Admissions Review Committee for the purpose of making a presentation to support their application for membership. The respondent's constitution provides that the Admissions Review Committee should include, if possible, representation from the following groups: "Superintendents, High School Principals, Junior High School/Middle School Principals, Modified Association, Council of Administrators, High School Association and a current or former Business Manager". The Admissions Review Committee would then report its findings, and, within a reasonable time thereafter, a vote upon the application must be made by the member schools by a referendum postcard ballot. The referendum postcard ballots, in order to be valid, must bear four sepa-

rate signatures, to wit, Chief School Officer of the District, Building Principal, Woman Representative of the School, and Man Representative of the School. Results of the balloting are based on the majority of valid cards received.

Against this background, in March 1995 and in June 1995, Chaminade and Kellenberg, respectively, applied for membership in Section VIII, and the procedures outlined above were followed. Indeed, the Admissions Review Committee, after an on-site visit to the schools, meetings with school administrators, athletic coaches, and student athletes as well as having access to files and financial records, issued major findings with respect to both institutions and concluded with regard to both institutions, "absolutely no recruiting of athletes takes place" and that there was no reason why Chaminade or Kellenberg should not be admitted to Section VIII as full members. The Committee also determined that no scholarships for athletes were available at either institution. Ultimately, after what appears from the record to have been a campaign by some athletic directors from several of the Section VIII schools against Chaminade and Kellenberg, they were denied approval by a majority of votes from Section VIII's member schools (Chaminade 45-12; Kellenberg 40-16, with one abstention), and for that reason alone their applications were denied. The postcard referendum voting, noted above, did not require the insertion of any reason for a member school's decision.

Chaminade and Kellenberg commenced the instant proceeding seeking, *inter alia*, to annul the respondent's determination and, in effect, a declaration that each institution is a member of Section VIII and a direction that Section VIII accept each institution as a full member. The petitioners asserted that the denial of their applications denied them due process of law, the equal protection of the law, and the right of free association in violation of the Constitutions of the United States and the State of New York.

The Supreme Court, citing the test used by the Court of Appeals in Walsh as the rational basis standard, not the strict scrutiny standard, denied the petition, and declared that Section VIII's voting procedure was not violative of Chaminade's and Kellenberg's constitutional rights to equal protection, due process of law, and free association. In a memorandum decision dated June 11, 1996, the Supreme Court stated that "the only basis upon which a potentially meritorious due process argument might be raised by Petitioners in this case would be based upon an assertion that the Respondents, in acting to deny Petitioners' membership applications, classified them on

a suspect basis (e.g. religion, race etc.)". The majority would affirm, relying upon the Court of Appeals' determination in *Walsh (supra),* as dispositive of the issues raised herein. I believe that the holding in *Walsh (supra)* permits a different result herein because the petitioners have raised the issue of possible religious discrimination without benefit of full discovery.

In *Walsh (supra),* under almost identical facts, Walsh, a Catholic high school, applied for membership in Section VI, an athletic association run by the State. As in the instant case, Section VI recognized a category of "Friends and Neighbors" schools. Walsh's application was accepted and it met the pertinent special admission procedures. Walsh, however, failed to obtain approval by a majority of votes from Section VI's member schools, and for that reason alone its application was denied. Walsh commenced a proceeding claiming its right to equal protection had been violated.

In affirming the Appellate Division's declaration that Section VI's referendum requirement did not deprive Walsh of equal protection, the Court of Appeals stated that the actions of Section VI constituted State action, and Section VI must, therefore, comply with applicable equal protection standards. The Court of Appeals further stated that the rational basis standard governed and concluded that the standard had been satisfied. The majority, relying upon *Walsh (supra),* contends that Section VIII's referendum voting procedure did not deprive Chaminade and Kellenberg of equal protection of the law.

Of paramount significance to this case, however, is that the Court of Appeals went on to state in *Walsh (supra,* 88 NY2d, at 137, 139) that:

"Notably, Walsh's due process claim—that the membership referendum is a 'secret ballot' that is inherently biased against schools like Walsh—is unpreserved. Thus, the legal implications of any belated due process complaint cannot be considered, nor may we even address the accuracy of the asserted factual underpinnings of the theory * * *

"In sum, Section VI's membership voting requirement for the enrollment of nonpublic schools is a rational screening process on its face, addressed to the particular concerns and issues affecting its otherwise exclusively public schools' membership roster. Finally, nothing in this record supports the assertion or speculation that this voting procedure is intrinsically arbitrary or a subterfuge masking invidious discrimination that would offend the safeguards of the equal protection of the laws of this land. Such factors would present an entirely different case and constitutional theory".

Here, in stark contrast, Chaminade and Kellenberg have asserted that they were denied procedural due process and denied admission based upon the fact that they were Catholic schools. The factual record in the instant proceeding is clearly different. To support their claim, Chaminade and Kellenberg submitted to the court below certain correspondence written by athletic directors opposed to their application that was circulated among the member schools prior to the vote. Ironically, this literature apparently was sent to Friends Academy, a member non-public school which successfully challenged its denial of admission to Section VIII (*see, Matter of Friends Academy v Section VIII of N. Y. State Pub. High School Athletic Assn.,* 154 Misc 2d 1). This correspondence, which can only be characterized as disturbing in nature, displays an anti-Catholic sentiment, pointedly referring to "The Rosary" as a proffered reason why Catholic school athletic teams in the tri-State area have excelled, and would permit the reader to draw an inference of religious bias. For example, one of the documents posed the following questions:

"Question I:

"Why are 8 of the 10 teams in the tri-state area Catholic Schools?

"A) Catholics are the best players

"B) The Rosary helps

"C) They recruit

"D) All 6'7" students must go to Catholic H.S.

"If you answer Question #1 wrong, go to Question #2.

"Question II:

"Why are 8 of the 10 teams in the tri-state area Catholic Schools?

"A) They recruit

"B) They recruit

"C) They recruit

"D) All of the above."

Another document identified Chaminade and Kellenberg as "Select Institutions allowing only the elite to enter" and schools which "always have the potential to recruit players". That document further identified two other regional Catholic schools that "have openly recruited". However, the Admissions Review Committee specifically made contrary findings, to wit, that the applicants did not recruit athletes.

Yet another document announced a special meeting of coaches to "discuss what action can be taken to eliminate the

possibility of the two *Private Catholic Schools* entering into Section VIII athletics" (emphasis supplied).

The Supreme Court held that these documents are not suggestive of impermissible reasons behind the vote to exclude the petitioners and were of no probative value. However, it cannot be said as a matter of law that said statements do not convey a clear message of bias.

On this issue, the case *of St. Augustine High School v Louisiana High School Athletic Assn.* (270 F Supp 767, *affd* 396 F2d 224), is particularly instructive. There, an all-black private school was denied admission to a Louisiana association which coordinated interscholastic athletics for approximately 400 Louisiana schools, despite having met all standards for membership. The basis for the denial of admittance was the vote of the general membership. In affirming the order that the school be immediately admitted to membership, the Fifth Circuit Court of Appeals noted that the evidence supported the inference that the applicant was denied membership on racial grounds. The Court, however, went on to state: "We agree with the district court that the LHSAA may establish reasonable and definite [and non-discriminatory] standards for membership. But participation in this state program may not be denied to applicants meeting those standards on the basis of adverse vote by those already fortunate enough to be participants. Thus we construe the word 'arbitrary' as used by the district court in the phrase 'arbitrary vote' to mean a vote to deny membership to an applicant which has met proper and reasonable membership requirements and standards as defined by the Association. If the applicant meets the standards no showing of hands can exclude it from becoming a part of this state activity" (*St. Augustine High School v Louisiana High School Athletic Assn., supra,* 396 F2d, at 228). Mindful that the New York Court of Appeals in *Walsh (supra)* upheld the majority voting procedure of the respondent, nevertheless, in my view, the record as indicated hereinabove supports the assertion that the subject voting procedure which permitted denial of the applications, without explanation, perhaps masked discriminatory reasons. Chaminade and Kellenberg seek the opportunity of discovery to explore their claims of deprivation of safeguarded constitutional rights in order to determine whether in fact the postcard referendum vote which gave no reason for rejection was actually based upon religious bias. They assert that if they are able to show such bias by testimonial and documentary evidence, the strict scrutiny test as alluded to in *Walsh (supra)* and *St. Augustine (supra)* should apply. If the applicants cannot make

such a showing then the petition shall be dismissed upon the authority of *Walsh (supra)*.

Accordingly, I respectfully dissent, and vote to reverse the judgment and grant the petition and remit the matter for further proceedings consistent herewith, *inter alia*, to afford the petitioners an opportunity for discovery in order to determine whether the negative vote was in fact arbitrary and rooted in bias.