OPINION OF THE COURT
Kenneth R. Fisher, J.
In this action pursuant to 42 USC § 1983, and under the *885 New York Constitution, plaintiff alleges that defendants violated its substantive due process, and equal protection, rights by causing it to expend effort and money to secure approval of a land use project defendants never intended to approve. Defendants move to dismiss the complaint for failure to state a cause of action (CPLR 3211 [a] [7]).
A. The Facts
Plaintiff is a “contract-vendee” of land in the Town of Ogden near the Village of Spencerport. Plaintiff alleges that defendants intentionally delayed action on plaintiff’s proposal until they could obtain submission and approval of a competing senior citizen housing project proposed by a well-liked local developer who hired an attorney married to a Town Councilwoman. Giving the complaint, as supplemented by affidavits submitted by the plaintiff, an exceedingly liberal construction, the following salient facts are alleged. Plaintiff approached defendants informally in the late spring of 1997 with a subdivision proposal for senior citizen housing on property zoned for R-2 uses, which allow duplex housing. According to the complaint, plaintiff abandoned this original plan in response to defendants’ entreaties, and formally submitted a proposal in August of 1997 for approval of a subdivision plat involving large-lot single-family homes and free-standing patio homes without inclusion of duplexes. Subsequently, when faced with defendants’ apparent preference for a competing senior citizen proposal submitted by another local developer, Michael LoPresti, plaintiff withdrew its proposal in frustration sometime in February 1998. Plaintiff substituted a duplex subdivision proposal for an R-2 district with some minor portions calling for uses not permitted in R-2 districts. Defendants eventually denied plaintiff’s application and plaintiff did not seek review of the denial in a CPLR article 78 proceeding. Instead, plaintiff filed this section 1983 action alleging a deprivation of its constitutional rights.
Plaintiff does not now appear to have any interest in the property, although the record is inconclusive on the point; it did not challenge defendants’ delay and denial of the subdivision application in an article 78 proceeding or in an action for a declaratory judgment; it does not in this action seek to overturn the Town’s decision; and it does not join the owner of the land in this lawsuit. The owner is nowhere mentioned in the pleadings and it is not revealed whether the owner believes *886 that defendants unconstitutionally restricted or infringed any ownership rights in the parcel.[1] Instead, plaintiff seeks damages for its “opportunity cost” borne because defendants led it to believe that its project eventually would be approved within the time specified in its purchase contract when, all along, defendants planned to reject plaintiffs project in favor of a proposal for senior citizen housing presented by a locally favored developer.
In particular, plaintiff contends that it would have submitted a formal proposal for two-family duplexes early on that defendants virtually would have been required to approve under the Town Zoning Code (Ogden Town Code ch 210 [hereinafter referred to as Zoning Code]) then in existence, which clearly permitted such uses, but for its knowledge that defendants, for a long time, wished to change the Zoning Code to prohibit duplexes in the area of the subject property, and defendants’ request for plaintiffs cooperation in carrying out such wish. Plaintiff alleges that, when it broached the subject of duplex development, defendants begged off, and induced it to enter into “an oral agreement” with certain of defendants which called upon plaintiff to change its project to one involving construction of large-lot single-family homes and patio homes. In return, according to plaintiff, defendants would change the Zoning Code to permit the multiple uses on the subject parcel that plaintiff desired to incorporate into the project, and, presumably (because such presumption is all that is alleged), approve the project in time for the deadline set in plaintiffs purchase and sale contract. The long and the short of plaintiffs claim is that it expended large sums, for which it seeks compensatory damages, to satisfy the particular demands of defendants in regard to the alternative large-lot single-family and patio-home project design desired by defendants, when it could have, without a bureaucratic run-around, easily submitted the original duplex plan for swift approval under the existing Code.
*887 B. First and Third Causes of Action: Substantive Due Process
In the first and third causes of action, plaintiff alleges, respectively, a violation of the Federal and State constitutional guarantee that the State not deprive it of property without due process of law. (US Const 14th Amend; NY Const, art I, § 6.) Most of the discussion in this section concerns the Fourteenth Amendment. At the end of this section, however, the court concludes that, although the New York Court of Appeals has for some purposes given the State Due Process Clause a broader interpretation than the Federal guarantee, no such rule covers the circumstances of this case.
As a preliminary matter, the court merely “assume [s] without determining the issue” that a contract-vendee “shares” with the property owner the property rights of the landowner. (DLC Mgt. Corp. v Town of Hyde Park, 163 F3d 124, 130 [2d Cir 1998].) Whether the owner was deprived of a property right in violation of the substantive due process principle “begin [s]” with the question whether the property right asserted is cognizable under the Federal Constitution. (Supra, 163 F3d, at 130.) “In this regard, a property right will not be recognized as cognizable under the due process doctrine if the person claiming the right has a mere abstract need or desire for, or unilateral expectation of the claimed right. Rather, the person claiming the right must have a ‘legitimate claim of entitlement’ to it.” (Supra, 163 F3d, at 130, quoting Board of Regents v Roth, 408 US 564, 577 [1972].) In determining whether such a legitimate claim of entitlement is asserted, the court must identify precisely what plaintiff claims it was entitled to, and then determine whether New York zoning law conferred such a legitimate claim of entitlement on plaintiff. (Supra, 163 F3d, at 130.)
In this case, the allegations of plaintiff’s complaint suggest two theories of entitlement. First, plaintiff claims that it had a legitimate claim of entitlement to continued positive consideration of the large-lot single-family and patio-home project, or at least the right to be free from defendants’ misleading representations causing it to pursue the single-home and patio-home approach, and to enactment of amendments to the local Zoning Ordinance defendants stated that they desired, which would accommodate plaintiff’s subdivision proposal. The second theory of relief a liberal construction of the complaint yields is that plaintiff had a legitimate claim of entitlement to the existing R-2 zoning classification of the land to accommodate the original proposal to build two-family duplexes, an allowable *888 use in an R-2 district. The latter claim of entitlement appears to be the more concrete theory of the case, and therefore it is considered first.
As very recently summarized by the Second Circuit, “Under New York law, a property owner has no right to the existing zoning status of his land unless his right has become ‘vested.’ See, e.g., In the Matter of Ellington Constr. Corp. v. Zoning Board of Appeals of the Inc. Village of New Hempstead, 77 N.Y.2d 114, 122, 566 N.E.2d 128, 132, 564 N.Y.S.2d 1001, 1005 (1990). In order for a right in a particular zoning status to vest, a property owner must have undertaken substantial construction and must have made substantial expenditures prior to the enactment of the more restrictive zoning ordinance. Id. “Where * * * there has been no construction or other change to the land itself,’ a property owner has no right to complete a project permitted under an earlier zoning classification. In the Matter of Pete Drown, Inc. v. Town Board of the Town of Ellenburg, 229 A.D.2d 877, 879, 646 N.Y.S.2d 205, 206 (3d Dep’t 1996). In instances in which construction has been improperly delayed by town officials in an attempt to prevent vesting, the right to an existing zoning status may also vest by equitable estoppel. See In the Matter of Lawrence School Corp. v. Morris, 167 A.D.2d 467, 468, 562 N.Y.S.2d 707, 708 (2d Dep’t 1990); In the Matter of Faymor Dev. Co. v. Board of Standards & Appeals of City of New York, 45 N.Y.2d 560, 566, 383 N.E.2d 100, 103, 410 N.Y.S.2d 798, 801 (1978).” (DLC Mgt. Corp. v Town of Hyde Park, 163 F3d, supra, at 130-131.) Plaintiff does not claim that it began construction and expended, in connection therewith, substantial sums. (Compare, Town of Orangetown v Magee, 88 NY2d 41, 47-48, 52-53 [1996].) Nor does it contend that defendants gave it an approval or a permit upon which it could peg a property interest. (Compare, supra, 88 NY2d, at 52-53; Villager Pond v Town of Darien, 56 F3d 375, 379 [2d Cir 1995], cert denied 519 US 808 [1996].) Instead, plaintiff argues that its interest in the existing R-2 zoning classification of the land, which permitted construction of two-family duplexes, “vested” by the operation of equitable estoppel because defendants, by means of securing an agreement to delay consideration of the project and setting plaintiff off on another course, induced plaintiff to believe that the alternative project for large-lot single-family homes and patio homes would be approved under a change in the Zoning Law that, for a long time, defendants wished to enact anyway. According to this theory of the case, Town officials improperly delayed consideration of a *889 simple R-2 two-family duplex project to prevent vesting under the existing Zoning Ordinance, which enabled them to facilitate submission of a competing application by a locally favored developer by enacting amendments to the Zoning Ordinance which would permit the competing project, but not plaintiffs originally planned duplex project.
One problem with plaintiffs duplex theory of the case is that plaintiff never submitted a proposal in early 1997 for a two-family duplex project. Plaintiffs choice to forego submission of a duplex subdivision plan in 1997, of course, prevented final, or even preliminary, agency action on it. The court has found no case which has sustained an inchoate substantive due process land use claim of this sort. As discussed below in connection with plaintiffs single-family and patio-home proposal theory of the case, a failure to see the administrative process through a final decision renders a substantive due process claim not ripe for review. (Williamson County Regional Planning Commn. v Hamilton Bank, 473 US 172, 199-200 [1985]; Southview Assocs. v Bongartz, 980 F2d 84, 96-97 [2d Cir 1992], cert denied 507 US 987 [1993].) A substantive due process claim is premature when, instead of seeking mandamus relief, plaintiff “went along with the political process until it was too late.” (Covington Ct. v Village of Oak Brook, 77 F3d 177, 179 [7th Cir 1996], citing River Park v City of Highland Park, 23 F3d 164, 167 [7th Cir 1994]; see, Orange Lake Assocs. v Kirkpatrick, 21 F3d 1214, 1224-1225 [2d Cir 1994] [same].) Therefore, plaiptiffs claim that it had a substantive due process interest in connection with its originally intended duplex project is not ripe for review, and is by now foreclosed.
Nevertheless, the court considers the claim on the merits, as if the originally intended proposal had been submitted for preliminary plan approval by the Planning Board, and denied. Because it is clear from plaintiffs allegations, if taken as true, that defendants intentionally delayed or forestalled submission of plaintiffs proposed duplex project under the then existing Zoning Ordinance to prevent “vesting” if vesting would otherwise have occurred (Cedarwood Land Planning v Town of Schodack, 954 F Supp 513, 522-523 [ND NY 1997] [collecting New York cases]), the question devolves to whether, in fact, vesting was possible under the Code as it existed in 1997. If such “vesting” could not have occurred under applicable law in the absence of defendants’ claimed improper delay, such delay itself cannot establish a violation of plaintiffs substantive due process rights. (Crowley v Courville, 76 F3d 47, 52 [2d Cir *890 1996] [absence of valid property interest renders inquiry into defendants’ alleged arbitrary conduct unnecessary].)
“Under the entitlement test, a constitutionally-protected property interest exists in a sought-after land-use permit or approval if the issuing agency lacked the authority to deny the permit or approval for a legitimate reason, or if the discretion of the issuing agency was so narrowly circumscribed that approval of a proper application was virtually assured.” (DLC Mgt. Corp. v Town of Hyde Park, 163 F3d 124, 132, supra.) “Because the focus of this inquiry is on the degree of the issuing agency’s official discretion and not on the probability of its favorable exercise, the question of whether an applicant had a protected property interest is normally a matter of law for the court.” (Supra, 163 F3d, at 132-133; see, Matter of Twin Town Little League v Town of Poestenkill, 249 AD2d 811 [3d Dept 1998].) Where municipal officials “have wide discretion to deny [a] housing application, there can be no certainty or very strong likelihood that [municipal] officials, absent [the] alleged due process violation, would have approved the permit; therefore, the applicant [would] not have an entitlement sufficient to invoke the protection of the due process clause”. (Orange Lake Assocs. v Kirkpatrick, 21 F3d 1214, 1225 [2d Cir 1994], supra; see also, Gagliardi v Village of Pawling, 18 F3d 188, 192 [2d Cir 1994].)
Plaintiff has variously described its originally intended project. As disclosed by the complaint, the originally intended proposal, which as stated above was never submitted in any form, was not simply for two-family duplexes permitted in R-2 districts. According to the complaint, plaintiff originally intended a small portion of the duplex subdivision to be commercial in nature, and multiple family residential (MFR). Therefore, under the version of the originally intended proposal set forth in the complaint, either a rezoning of those minor portions, or variances, would have been required if plaintiff had pressed ahead with the original project it claims was forestalled by defendants’ improper delay on the alternative large-lot single-family and patio-home proposal. If a variance was needed for any aspect of the proposal, plaintiff would not be able to state a substantive due process claim because the variance provisions of the Ogden Zoning Code (§§ 210-100, 210-101) confer at least as broad a discretion on Town officials to grant or deny a variance as those held to preclude a finding of an entitlement or cognizable property interest in Crowley v Courville (76 F3d 47, 52 [2d Cir 1996], supra).
*891 Plaintiff stresses in a surreply affidavit that it would have gone ahead with a simple duplex subdivision proposal if it could have foreseen defendants’ subsequent alleged misconduct, and the complaint may be read to allege as much. The pleadings at this stage must be considered liberally. Accordingly, and notwithstanding specifically pleaded facts to the contrary, consideration of plaintiff’s substantive due process claim assumes that it truly intended, at least at first, a duplex subdivision project without a need for variances or rezoning, and the court indulges the fiction, as described above, that such a project was indeed submitted to defendants for approval, and that defendants rejected it.
Although construction in an R-2, two-family district does not normally require a site plan review by the Planning Board (see, Ogden Zoning Code §§ 210-11, 210-29), plaintiff intended a major subdivision of five or more lots on a 52-acre parcel, and therefore was required to obtain Planning Board approval under Ogden Town Code § 173-5. (See also, Ogden Zoning Code § 210-12.) Although the Ogden Code provides for detailed application procedures and consideration of proposals for major subdivisions, no provision exists which prescribes the standards for approval or disapproval of a preliminary plan or final subdivision plat. Moreover, the Ogden Zoning Code (ch 210) provides that, where subdivision approval is needed under Ogden Town Code chapter 173 (hereinafter referred to as Subdivision Code), the proposal “shall not be subject to review under this section [sic — probably means chapter]” (Ogden Zoning Code § 210-12). Accordingly, the governing criteria for approval or disapproval are found in the enabling statute itself, Town Law §§ 276 and 277, as interpreted by applicable case law.
Under these sections, if the Planning Board provides substantial evidence for its decision and makes sufficiently detailed findings on the record, it has wide discretion in approving or disapproving a subdivision plat. (Matter of Michelson v Warshavsky, 236 AD2d 406, 407 [2d Dept 1997]; Thomas v Brookins, 175 AD2d 619 [4th Dept 1991].) These provisions of the Town Law, sections 276 and 277, have been held to confer wide enough discretion on town officials to preclude a claim of entitlement sufficient to create a property interest cognizable under the substantive due process doctrine. (Honess 52 Corp. v Town of Fishkill, 1 F Supp 2d 294, 304 [SD NY 1998]; Cedarwood Land Planning v Town of Schodack, 954 F Supp 513, 524-525, supra; cf., Deepwells Estates v Incorporated Vil. of Head of Harbor, 973 F Supp 338, 349 [ED NY 1997] [analo *892 gous provisions for subdivision approval under the Village Law].) Accordingly, the equitable estoppel theory of recovery directed to the originally intended duplex proposal is without merit. Even accepting plaintiffs claim that defendants’ conduct was improper, it had no legitimate claim of entitlement to approval of a straight duplex subdivision proposal plaintiff contends it originally intended. A fortiori it had no cognizable property interest in the actual subdivision proposal for duplexes and other uses submitted in 1998, which required variances for commercial and MFR uses in that R-2 district. (Crowley v Courville, 76 F3d, supra, at 52.) Plaintiff has no cause of action under the duplex subdivision theory of the complaint.
The second theory of a substantive due process violation suggested by the complaint concerns plaintiffs claim that he had a substantive due process right to continued favorable consideration of the large-lot single-family and patio-home project defendants told it they preferred, and enactment of amendments to the Zoning Code that would have been necessary to facilitate the project, i.e., rezoning to R-1, MFR and NC districts in the appropriate places on the parcel.
The assumption that a contract-vendee’s rights in the prospectively purchased property were the same as the vendor-owner in the context of desired zoning changes is much harder to make than in the context discussed above. (See, n 1, supra.) But for purposes of this discussion that assumption is made, as is the assumption, perhaps even more difficult to make in light of New York and Town of Ogden Zoning Law, that State law required defendants to enact the changes made, i.e., that plaintiff would have won an article 78 proceeding. Plaintiff concentrates on defendants’ encouragement of the single-family and patio-home approach, and makes much of their subsequent delay and subterfuge. We assume here, without deciding, that defendants were not entitled to delay consideration of the single-family and patio-home project, and that plaintiff was entitled, under State law, to passage or enactment of the zoning changes needed to obtain approval of the project.
Plaintiff does not succeed in making out a section 1983 claim even with the benefit of these assumptions. As in the case of the other, or duplex, theory of the complaint, it is important that plaintiff did not pursue the single-family and patio-home proposal. Plaintiff formally submitted it, of course, but instead of utilizing State law mechanisms such as an article 78 mandamus proceeding to force consideration of its *893 subdivision application (Matter of Pokoik v Silsdorf, 40 NY2d 769, 773 [1976]; Matter of Huntington Ready-Mix Concrete v Town of Southampton, 112 AD2d 161, 162 [2d Dept 1985]), plaintiff abandoned that path and did not make any effort to obtain a vote on it from defendants. By abandoning the approval process, plaintiff prevented a final decision by the issuing agency. Inasmuch as plaintiff is on these facts “in about the same boat” as the unsuccessful plaintiffs in River Park v City of Highland Park (23 F3d 164, supra) and Covington Ct. v Village of Oak Brook (77 F3d 177, 179 [7th Cir 1996], supra [from which the quoted words are taken]), this second theory of a substantive due process claim is also held without merit. (See also, Williamson County Regional Planning Commn. v Hamilton Bank, 473 US 172, 199-200, supra; Orange Lake Assocs. v Kirkpatrick, 21 F3d 1214, 1225, supra [“a substantive due process claim is not ripe for review absent the rendering of a final decision by the governmental entity”].)
Even if the substantive due process claim as it relates to the large-lot single-family and patio-home proposal is ripe for review, plaintiff still does not have a cause of action under this theory. Plaintiff did not begin construction, nor does it allege that it expended anything more than the normal expenditures that might reasonably be expected by a developer trying to push through a substantial housing development. Moreover, plaintiff’s claim focuses on only one aspect of the substantive due process analysis, defendants’ alleged arbitrary and capricious misleading conduct, without establishing, or recognizing even, the other element of its cause of action, i.e., whether a protected property interest is invoked in the first instance. Plaintiff’s theory of the case from the single-family and patio-home proposal angle focuses strictly on defendants’ conduct of the application process itself without regard to the end result. Most cases involve a plaintiff asserting a property interest in the final result of the application process. Here, plaintiff is attempting to define a correlative property interest in a particular aspect of the application process, here the give and take between an applicant and Town officials in the context of a competing application from another developer.
The case of Zahra v Town of Southold (48 F3d 674 [2d Cir 1995]) shows why plaintiff’s claim has no merit on its face. There, the plaintiff developer asserted a similar scenario. He alleged a property interest in a particular aspect of the application process, a property inspection, that State courts had earlier determined that he was entitled to under State law. *894 Describing plaintiffs claim of a constitutionally cognizable property interest in the inspection as “novel”, in that it “attempt [ed] to define a derivative property interest based upon an [assumed] existing property interest” in the permit or end result of the administrative process (supra, 48 F3d, at 681, and 681, n 3), the court soundly rejected it (supra, 48 F3d, at 681), and explained: “The mere existence of procedures for obtaining a permit or certificate do not, in and of themselves, create constitutional ‘property interests.’ Were we to hold otherwise, aggrieved property owners would be empowered to bring constitutional challenges at virtually every stage of the building process in municipalities. We expressly decline to announce a rule that would obligate federal courts [i.e., in section 1983 actions] to consider endless numbers of alleged ‘property interests’ arising not from the benefits themselves, but as extensions of existing or sought property interests.” (Supra, 48 F3d, at 681-682.) This holding recognizes the peculiar and “necessary balance” the “strict entitlement” test is designed to achieve, which leaves to local governments the discretion conferred by statute “to regulate matters of local concern” and provides protection for a “landowner’s need for constitutional protection” in an extreme case. (Villager Pond v Town of Darien, 56 F3d 375, 379 [2d Cir 1995], cert denied 519 US 808 [1996], supra; see also, Zahra v Town of Southold, 48 F3d, supra, at 680 [“this standard appropriately balances the need for local autonomy, with recognition of constitutional protection at the very outer margins of municipal behavior”].)
Close examination of plaintiffs claim thus yields the ready conclusion that it seeks, under the rubric of substantive due process, to regulate the very political process the strict entitlement test is designed to preserve to local governments. Because “decisions on matters of local concern should ordinarily be made by those whom local residents select to represent them in municipal government — not by * * * courts [in section 1983 litigation] * * * the Due Process Clause does not function as a general overseer of arbitrariness in state and local land-use decisions”. (Zahra v Town of Southold, 48 F3d, supra, at 680; see also, Coniston Corp. v Village of Hoffman Estates, 844 F2d 461, 467 [7th Cir 1988, Posner, J.] [“much governmental action is protectionist or anticompetitive * * * and nothing is more common in zoning disputes than selfish opposition to zoning changes” — and adding: “The Constitution does not forbid government to yield to such opposition; it does not outlaw the characteristic operations of democratic * * * government, *895 operations which are permeated by pressure from special interests”].) Accordingly, plaintiffs attempt to make out a substantive due process claim on the basis of defendants’ allegedly improper conduct toward it, alone and without regard to the entitlement aspect or element of a substantive due process claim, is without merit. (See also, RRI Realty Corp. v Incorporated Vil. of Southampton, 870 F2d 911, 919 [statutory discretion to deny permit defeats substantive due process claim even if officials mislead plaintiff to believe approval was forthcoming and “regardless of how unlawful under state law the ultimate denial may have been”].) In any event, the conduct of the defendants complained of is so far removed from the level of “most egregious” and conscious-shocking conduct needed to make out a substantive due process violation that plaintiffs claim of constitutional arbitrariness is wholly wanting. (County of Sacramento v Lewis, 523 US 833, 846 [1998].)[2] Because plaintiff cannot contend, and indeed does not contend, in light of applicable State and local Zoning Law, that defendants otherwise were “substantively forbidden to keep the land” under the existing R-2 classification (River Park v City of Highland Park, 23 F3d 164, 167 [7th Cir 1994], supra), plaintiff is relegated to established State law mechanisms (i.e., article 78 or a declaratory judgment action) which allow such a plaintiff to enjoin defendants to follow the procedures State law provides to effectuate the political process needed to enact the zoning changes. (Supra, 23 F3d, at 167.) This is so because “the due process clause does not require a state to implement its own law correctly.” (Gosnell v City of Troy, 59 F3d 654, 658 [7th Cir 1995] [“developers cannot move land-use disputes to federal court (via section 1983) by crying ‘substantive due process’ ”].)
One final comment is required by plaintiffs reliance on the Third Circuit’s expansive view of substantive due process. (See, Sameric Corp. v City of Philadelphia, 142 F3d 582, 593-596 [3d Cir 1998]; DeBlasio v Zoning Bd. of Adj., 53 F3d 592, 600-601 [3d Cir 1995], cert denied 516 US 937 [1995].) Under that viéw, which eschews the “legitimate claim [ ] of entitlement” test (supra, 53 F3d, at 600, n 9), ownership alone establishes a cognizable property interest (supra, 53 F3d, at 600-601), and a claim is made out whenever a plaintiff claims that the Zoning *896 Board’s “decision limiting the intended land use was arbitrarily or irrationally reached.” (Supra, 53 F2d, at 601.) Indeed, under DeBlasio, an issue of fact is raised even when only one member of the Board is shown to have harbored purely personal reasons for the decision. (Supra, 53 F3d, at 601-602; see also, Sameric Corp. v City of Philadelphia, 142 F3d, at 593-594.)
This court is not persuaded. Judge Alito of the Third Circuit has persuasively argued in dissent that DeBlasio (supra) is wrongly decided. (Phillips v Borough of Keyport, 107 F3d 164, 184-187 [3d Cir 1997] [Alito, J., dissenting in part].) The widely held majority view adheres to the Roth strict entitlement test and the published section 1983 decisions in this State employ the legitimate claim of entitlement formulation. (Town of Orangetown v Magee, 88 NY2d 41, 52-53, supra; Matter of Twin Town Little League v Town of Poestenkill, 249 AD2d 811 [3d Dept 1998], supra; Reed’s of Armonk Bldg. Supply v Curry, 246 AD2d 587 [2d Dept 1998].) This court is, therefore, not free to adopt a contrary formulation.
[61 Plaintiff is entitled to no broader consideration under the State Due Process Clause (NY Const, art I, § 6), even if plaintiff may maintain such a constitutional tort action against local government officials under Brown v State of New York (89 NY2d 172, 192 [1996] [recognizing a “narrow remedy” in damages against the State for equal protection and search and seizure claims under the NY Constitution]; see, Wahad v Federal Bur. of Investigation, 994 F Supp 237, 238-240 [SD NY 1998] [predicting that New York courts would not sanction an action under Brown premised on a violation of NY Constitution, article I, § 6]; Augat v State of New York, 244 AD2d 835 [3d Dept 1997]; Remley v State of New York, 174 Misc 2d 523 [Ct Cl 1997] [so holding]). In two decisions, the New York Court of Appeals has interpreted the State version as broader than the Federal guarantee. First, in Sharrock v Dell Buick-Cadillac (45 NY2d 152, 159-160 [1978]), the Court eschewed a State action requirement in the context of a procedural due process claim. Second, the Court held that a pretrial detainee has a liberty interest in contact visitation. (Cooper v Morin, 49 NY2d 69 [1979], cert denied sub nom. Lombard v Cooper, 446 US 984 [1980], rejecting Bell v Wolfish, 441 US 520 [1979].) On other occasions, however, the Court of Appeals has refused to extend the reach of the State Due Process Clause. (See, People v Alvarez, 70 NY2d 375, 379-380 [1987]; People v Kohl, 72 NY2d 191 [1988]; cf., Matter of Lee TT. v Dowling, 87 NY2d 699, 713 [1996].) In the absence of a clear signal from the Court of Ap *897 peals in the substantive due process context, however, this nisi prius court should not announce a novel constitutional rule. Plaintiff “fails to demonstrate convincingly why a standard different from that [provided by the Federal Constitution] should be imposed as a matter of State constitutional law”. (People v Paris, 229 AD2d 926 [4th Dept 1996].) Even if the New York Court of Appeals would sanction so-called constitutional tort claims based on asserted violations of the State constitutional due process guarantee in a rough and judicially created counterpart to the section 1983 action, there is no indication, however, that State administrative law under article 78 would be dead letter such that courts would not be required in that context to determine whether claims are ripe for consideration. Accordingly, the third cause of action is dismissed.
C. Second Cause of Action: Equal Protection
Plaintiff contends that its treatment at the hands of defendant stands in stark contrast to the treatment it alleges was given, and currently is being given, to a locally favored developer who is represented by the husband of a defendant Town Council member. This disparate treatment, plaintiff alleges, entitles it to relief under the Equal Protection Clause. There is no contention that the Subdivision Code or the Zoning Code are themselves facially discriminatory, but only that these Codes were administered unequally by means of selective enforcement. Such a claim must include allegations tending to show conduct by Town officials evincing “an element of intentional or purposeful discrimination.” (Snowden v Hughes, 321 US 1, 8 [1944]; see also, Village of Arlington Hgts. v Metropolitan Hous. Dev. Corp., 429 US 252, 265 [1977]; Washington v Davis, 426 US 229, 239 [1976]; Matter of Di Maggio v Brown, 19 NY2d 283, 290-291 [1967].)
At least for these purposes, analysis of plaintiff’s equal protection claim is the same under the Federal and State Constitutions. (Campaign for Fiscal Equity v State of New York, 86 NY2d 307, 319-320 [1995]; Board of Educ. v Nyquist, 57 NY2d 27, 42-44 [1982]; see generally, Golden v Clark, 76 NY2d 618, 624 [1990]; Matter of Esler v Walters, 56 NY2d 306, 313-314 [1982]; Dorsey v Stuyvesant Town Corp., 299 NY 512, 530-531 [1949]; Gruen v County of Suffolk, 187 AD2d 560, 563 [2d Dept 1992].) Therefore, the second and fourth causes of action are considered together. “Upon a careful review of the complaint, and having accepted as true the factual averments of the complaint and accorded the ‘plaintiff! ] the benefit of all *898 favorable inferences which may be drawn from [its] pleading, without expressing our opinion as to whether [it] can ultimately establish the truth of th[e] allegations before the trier of fact’ ” (Weinbaum v Cuomo, 219 AD2d 554, 556 [1st Dept 1995], quoting Campaign for Fiscal Equity v State of New York, 86 NY2d, at 318), the court concludes that the second and fourth causes of action do not state a cause of action. (CPLR 3211 [a] [7].)
A State may not “deny to any person within its jurisdiction the equal protection of the laws” (US Const, 14th Amend, § 1), “which is essentially a direction that all persons similarly situated should be treated alike.” (City of Cleburne v Cleburne Living Ctr., 473 US 432, 439 [1985].)
“A violation of equal protection by selective enforcement arises if:
“ ‘(1) the person, compared with others similarly situated, was selectively treated; and (2) * * * such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.’ ” (Crowley v Courville, 76 F3d 47, 52-53, supra, quoting LaTrieste Rest. & Cabaret v Village of Port Chester, 40 F3d 587, 590 [2d Cir 1994]; see, Matter of 303 W. 42nd St. Corp. v Klein, 46 NY2d 686, 693 [1979].)
Plaintiffs difficulty is that it abandoned the project proposal that, arguably, placed it in a similar position with the competing developer, LoPresti. Instead of sticking to its guns and riding the process out, plaintiff submitted a modified duplex subdivision proposal with some NC and MFR uses which made its project vastly different from the competing plan submitted by LoPresti. LoPresti’s project was more in line with what plaintiff alleges were defendants’ long-term plans for the district than the duplex project plaintiff ultimately pursued. Accordingly, the withdrawal of the single-family and patio-home proposal, alone, takes plaintiff out of the class of those who might be similarly situated to LoPresti, both as to timing and substance. LoPresti pressed on with his plan; plaintiff did not even though it had legal avenues to force defendants timely to consider it. (CPLR art 78 [mandamus]; cf., Matter of Pokoik v Silsdorf, 40 NY2d 769 [1976], supra; Matter of Envirotech of Am. v Dadey, 234 AD2d 968, 969-970 [4th Dept 1996].) Plaintiff loses on this basis alone. (See, Vukadinovich v Board of School Trustees, 978 F2d 403, 413-414 [7th Cir 1992] [one who has alcohol problems and has been arrested is not similarly situated to those who have alcohol *899 problems, or to those have been arrested, but who have not both had alcohol problems and been arrested]; see also, Mobijohn v Ellenville Cent. School Dist., 1995 WL 574461, 14, n 35, 1995 US Dist LEXIS 14323, *49, n 35 [ND NY, Sept. 28, 1995, McCurn, J.] [“there is also a temporal component to the similarly situated requirement of an equal protection claim”], affd 101 F3d 683 [2d Cir 1996].)
Even if, however, we assume that the simple withdrawal of the proposal without a vote by defendants does not hamstring plaintiffs effort to assert that, by virtue of its submission of the single-family and patio-home proposal, it was similarly situated to LoPresti, the allegations of plaintiffs complaint negate any claim of similarity. According to plaintiff, LoPresti planned a senior citizen apartment complex coupled with patio homes. Plaintiffs plan, submitted in August of 1997, was for large-lot single-family homes and patio homes. Although plaintiff would not be required to allege that the two plans were identical to survive a CPLR 3211 (a) (7) motion to dismiss, because those similarly situated for equal protection purposes “ ‘need not be identical in makeup’ ” (Klinger v Department of Corrections, 31 F3d 727, 736 [8th Cir 1994], quoting Betts v McCaughtry, 827 F Supp 1400, 1405 [WD Wis 1993], affd 19 F3d 21 [7th Cir 1994]), the complaint must allege that plaintiff and LoPresti “ ‘share [d] commonalities that merit[ed] similar treatment.’ ” (Supra, 31 F3d, at 736-737, quoting Betts v McCaughtry, 827 F Supp, at 1405.) The “similarly situated” requirement refers to “others similarly situated in all relevant respects save for that which furnishes the basis of the claimed discrimination”. (Matter of 303 W. 42nd St. Corp. v Klein, 46 NY2d, supra, at 695.) Where governmental actors are given statutory discretion, as these defendants were (see, above discussion), the applicable test is that, within the limits of the discretion conferred, the targets of regulation “are similarly situated when their circumstances present no distinguishable legitimate prosecutorial [or regulatory] factors that might justify making different prosecutorial [or regulatory] decisions with respect to them.” (United States v Olvis, 97 F3d 739, 744 [4th Cir 1996].)
Within the context of subdivision applications considered under the rubric of Town Law §§ 276 and 277, that requirement must be exceedingly hard to meet, even in the pleading stage. It is unnecessary in this case to reach the question of how similar each developer’s plan must be to warrant a conclusion that plaintiff and LoPresti were similarly situated, because the two plans alleged here do not meet any conceivable test of *900 similarity. The only similarity alleged is that senior citizen housing was targeted by both developers and that one aspect of each proposal was patio homes. In light of the wide discretion accorded to defendants under Town Law §§ 276 and 277 to approve or deny subdivision applications of this sort for a variety of reasons having to do with the particulars of the application submitted, plaintiffs assertion that he was similarly situated to LoPresti is on these facts wholly wanting. (Indiana State Teachers Assn. v Board of School Commrs., 101 F3d 1179, 1182 [7th Cir 1996] [rule 12 (b) (6) dismissal — plaintiff “failed to clear the first hurdle, that of alleging that winner and loser are identically situated in all relevant respects”].)
Putting aside this critical defect in the complaint, and assuming for the sake of argument that plaintiff has sufficiently alleged that it was similarly situated with LoPresti, plaintiff still fails to make out an equal protection claim under the second element, which requires that selective treatment be based on impermissible or discriminatory animus against a cognizable group or class of individuals, or that plaintiff was maliciously singled out for disparate treatment because of the exercise of constitutional rights, or bad-faith intent to injure plaintiff. Because plaintiff does not allege selective treatment based on cognizable group factors, or that any selective treatment resulted from an intentional effort by defendants to punish it for exercising its constitutional rights, plaintiff seeks to take advantage of those cases which hold that “evidence of a malicious or bad faith intent to injure” will support an equal protection claim. (Crowley v Courville, 76 F3d 47, 53, supra [quoted above]; see, Zahra v Town of Southold, 48 F3d 674, 684, supra [where no allegation of group bias or retaliation for the exercise of constitutional rights is presented, the question is whether plaintiff alleges “a malicious or bad faith intent to injure”]; FSK Drug Corp. v Perales, 960 F2d 6, 10 [2d Cir 1992] [same].) This theory of individual, or non-class-based, discrimination grounded in malicious or bad-faith intent to injure in the Snowden v Hughes (321 US 1, supra) selective enforcement context, has yet to be recognized explicitly by the Supreme Court.
The Federal Circuit Courts of Appeal are not in agreement on its applicability. (Compare, Futernick v Sumpter Twp., 78 F3d 1051, 1058 [6th Cir 1996], cert denied 519 US 928 [1996] [“it would be unwise to adopt the often-stated, but never-used, rule of the First and Second Circuits” because the Supreme Court “mentions only arbitrary classifications as a basis for *901 selective enforcement liability”, and “choosing to enforce the law against a particular individual is (not) a ‘classification’ as that term is normally understood”], citing Oyler v Boles, 368 US 448, 456 [1962], and Wayte v United States, 470 US 598, 608, n 10 [1985], with the Second Circuit cases cited above, and Rubinovitz v Rogato, 60 F3d 906, 911-912 [1st Cir 1995] [collecting the First Circuit cases recognizing the bad-faith or malicious intent to injure standard, but observing that “bad faith or malicious-intent-to-injure cases are infrequent” and that courts should “scrupulously” administer the standard].) The Seventh Circuit once eschewed the theory of non-class-based selective treatment )(Herro v City of Milwaukee, 44 F3d 550, 552-553 [7th Cir 1995]; New Burnham Prairie Homes v Village of Burnham, 910 F2d 1474, 1481-1482 [7th Cir 1990]), but now holds “that the equal protection clause provides a remedy when ‘a powerful public official picked on a person out of sheer vindictiveness.’ ” (Olech v Village of Willowbrook, 160 F3d 386, 387 [7th Cir 1998], quoting Esmail v Macrane, 53 F3d 176, 178 [7th Cir 1995].)
These latter Seventh Circuit cases seem more in line with the conventional wisdom that a plaintiff makes out a claim of malice in a case of non-class-based individual selective enforcement when he is being punished for exercising his lawful rights, particularly to petition the Government for redress of grievances. In Olech (supra, at 388), for example, the plaintiff brought a meritorious lawsuit against village officials, which so “angered” the Mayor that the officials refused to hook plaintiffs house up to the municipal water supply out of “an illegitimate desire to ‘get’ him”. In Esmail (supra, at 178), the Mayor and other city officials “developed a ‘deep-seated animosity’ ” toward plaintiff “due in part to Esmail’s success in getting” a prior revocation order changed to a mere suspension, again an exercise of the plaintiffs right to invoke legal process to redress grievances against the Government. This case is nothing like those cases, of course, and there is evidence that the Seventh Circuit would not approve of this complaint. (Indiana State Teachers Assn. v Board of School Commrs., 101 F3d 1179, 1182, supra [no prima facie case even].) The point here is only to show that the law remains unsettled.[3] Notwithstanding the arguments against adoption of this rule (Futernick v Sumpter *902 Twp., supra, at 1058-1059), it is assumed that the Equal Protection Clause extends to such cases. Acceptance of the concept, however, does not describe the circumstances which must be alleged to invoke the rule.
An allegation of differing treatment, alone, even among those similarly situated, does not amount to an allegation of malice, or bad-faith intent to injure, within the meaning of this rule. (Crowley v Courville, 76 F3d 47, 53, supra; Zahra v Town of Southold, 48 F3d 674, 684, supra.) In the absence of a claim of cognizable group discrimination or retaliation for the exercise of constitutional rights, the applicability of the Equal Protection Clause to claims of malicious treatment of an individual or entity is limited to “class-of-one plaintiffs victimized by ‘the wholly arbitrary act.’ ” (Indiana State Teachers Assn. v Board of School Commrs., 101 F3d 1179, 1181 [7th Cir 1996, Posner, Ch. J.], supra, quoting City of New Orleans v Dukes, 427 US 297, 304 [1976] [Per Curiam].) And by this is meant “wholly arbitrary” in a constitutional sense, not in the sense we State courts are familiar with that term in article 78 proceedings. “The concept of equal protection is trivialized when it is used to subject every decision [claimed to be arbitrary and capricious in the sense contemplated by principles of State administrative law] to constitutional review by federal courts.” (Supra, 101 F3d, at 1181; cf., County of Sacramento v Lewis, 523 US 833, 485, supra [same observation in the substantive due process context].)
No one suggests that, in a case of this sort, a simple choice between two developers, without more, violates the Equal Protection Clause, even if the choice is arbitrary. (Snowden v Hughes, 321 US 1, 8, supra [“not every denial of a right *903 conferred by state law involves a denial of the equal protection of the laws, even though the denial of the right to one person may operate to confer it on another”].) As cogently put in Indiana State Teachers Assn. (supra, 101 F3d, at 1181): “To decide is to choose, and ordinarily to choose between — to choose one suppliant, applicant, petitioner, protester, contractor, or employee over another. Can the loser in the contest automatically appeal [in a section 1983 action] on the ground that the decision was arbitrary and an arbitrary decision treats likes as unlike and therefore denies the equal protection of the laws? That would constitutionalize the Administrative Procedure Act”. So a choice between two developers or two subdivision applications, when only one project is desired, is not cognizable under the Equal Protection Clause, even if the choice is between a local developer and one from out of town. “[W]hen * * * the government is treating unequally two persons that are prima facie unequal in a rationally relevant respect”— “[t]here is nothing irrational or vicious about preferring the known quantity to the unknown” — “the equal protection clause is inapplicable because the plaintiff is asking for a revision of policy rather than for a restoration of equality.” (Supra, 101 F3d, at 1182 [emphasis supplied].)
But plaintiff alleges that its competitor was not merely a locally favored developer — the “known quantity” — but one connected, if only by legal representation, to a Town Councilwoman. It is not alleged, however, except by reference to a conclusory claim of a conspiracy among the defendants, that the Planning Board itself was infected with this claimed conflict of interest when it denied plaintiffs duplex project application. (See, Albiero v City of Kankakee, 122 F3d 417, 420 [7th Cir 1997] [“What this (i.e., allegation that defendants engaged in conspiracy) has to do with equal protection of the laws is a mystery. A municipality acts only through agents, and that these agents have agreed (= ‘conspired’) on a course of action does not present a constitutional problem”].) Instead, plaintiff alleges that the Town Board violated State law when it passed amendments to the Zoning Code designed to pave the way for approval of the LoPresti project. These allegations are wholly conclusory, but in any event, as set forth above, a violation of State law does not a constitutional claim make.
Plaintiff places great emphasis on the fact that Councilwoman Holbrook, the wife of LoPresti’s lawyer, made the motion to adopt the Zoning Code amendments. She recused herself when LoPresti’s project was presented at a hearing months *904 later. Whether Holbrook labored under a conflict of interest during any of the proceedings described in the complaint must be determined under State law in a proceeding appropriate to the purpose (no suggestion one way or another should be inferred here). The State Constitution does not provide an ethics manual for elected local government officials. Nor does it give a losing applicant such as plaintiff a section 1983 claim because plaintiff wishes “to break up the cozy existing relationship” it asserts exists between LoPresti and defendants. (Indiana State Teachers Assn. v Board of School Commrs., 101 F3d, supra, at 1182.) There may be good reasons to prefer plaintiff over LoPresti, although the record here provides no basis for decision, and there may have been good policy reasons to keep either one or the other of the Holbrooks out of the equation altogether, but these reasons “are remote from the considerations that inform the quest for equality whether between groups or between individuals, and they are not the business of a court in enforcing the equal protection clause.” (Supra, 101 F3d, at 1182.)
The available cases on point support this analysis, i.e., that political motivation of the kind alleged by plaintiff here does not establish malice within the rule of bad-faith or malicious intent to injure. In Cordeco Dev. Corp. v Vasquez (539 F2d 256 [1st Cir 1976], cert denied 429 US 978 [1976]), political motivation to favor another developer was held sufficient to support an equal protection verdict, but the court acknowledged in that case that the issue was not challenged at the trial or appellate level, and therefore was not “settled”. (Supra, 539 F2d, at 260, n 5.) Subsequent cases have made clear that “[t]he federal basis for liability in Cordeco * * * was never expressly litigated” (Creative Envts. v Estabrook, 680 F2d 822, 832 [1st Cir 1982]), and that the First Circuit has signaled a full retreat. (See, Nestor Colon Medina & Sucesores v Custodio, 964 F2d 32, 43-45 [1st Cir 1992]; Carter v Rollins Cablevision, 618 F Supp 425, 429-430 [D Mass 1985].) The case of Raskiewicz v Town of New Boston (754 F2d 38 [1st Cir 1985], cert denied 474 US 845 [1985]) shows that plaintiff has no equal protection claim. In Raskiewicz, there were allegations that plaintiff was denied a permit because of personal bias of the Board of Selectmen against him, coupled with allegations that plaintiff was not as politically influential as a competitor who collaborated with Board members against him. Moreover, it was alleged that defendants’ motivation was “ ‘rooted in their desire to acquire for themselves or others the ownership of plaintiff’s land for *905 the purpose of obtaining economic profit’ ” (supra, 754 F2d, at 43, 45, n 5). Plaintiffs attempt to make out a section 1983 due process and equal protection claim from such allegations was held frivolous. (Supra, 754 F2d, at 45-46.)
Although this court does not believe that the complaint is frivolous insofar as it alleges a denial of equal protection (cf., Yale Auto Parts v Johnson, 758 F2d 54, 61 [rejecting a similar equal protection claim based on political motivation to favor another, but on the ground that plaintiff failed to meet the “similarly situated” element of the claim]),[4] it is quite clear that plaintiff’s complaint does not allege any set of facts supporting the bad-faith malicious-intent-to-injure aspect of an equal protection violation. Similar allegations of a conflict of interest against a Planning Board chairman were held insufficient in Reed’s of Armonk Bldg. Supply v Curry (246 AD2d 587 [2d Dept 1998], supra [as disclosed by the record on appeal]). In summary, plaintiff does not allege any set of facts supporting a claim that it was similarly situated to LoPresti. Nor does plaintiff allege group, class or other discriminatory animus based on individual characteristics. Finally, plaintiff fails to show that it was maliciously singled out with an intention to injure it. Though the complaint may contain some conclusory allegations of illegal discriminatory purpose, the balance of the complaint when accepted as true, and giving it the benefit of all favorable inferences, shows at most differing treatment, without the requisite scienter. (Weinbaum v Cuomo, 219 AD2d 554, 556, supra.) Accordingly, the second and fourth causes of action are dismissed.
*906 Conclusion
Defendant’s motion to dismiss the complaint under CPLR 3211 (a) (7) is granted. The State Constitution does not permit courts to “sit as a zoning board of appeals.” (Village of Belle Terre v Boraas, 416 US 1, 13 [1974] [Marshall, J., dissenting], quoted in Yale Auto Parts v Johnson, 758 F2d, supra, at 58.) Nor does it permit courts freely to find that substantive due process or equal protection violations are adequately pleaded when, without more, “it is manifest that plaintiffs were treated shabbily and unfairly.” (DLC Mgt. Corp. v Town of Hyde Park, 163 F3d 124, 131, supra.) This court must adhere to “the Supreme Court’s admonition to delineate such rights only with caution and restraint.” (Supra, 163 F3d, at 131, citing Moore v City of E. Cleveland, 431 US 494, 502 [1977].) In this case, and even after a very generous reading of the complaint, the court finds that plaintiff does not bring itself within the protection of either clause of the State Constitution.

. Under State administrative law, plaintiff would have no standing if his contract term expired. (Matter of Pioneer-Evans Co. v Garvin, 191 AD2d 1026 [4th Dept 1993].) It is assumed for purposes of the present motions that plaintiff’s contract has been extended, and that the vendor does not oppose the action, necessary preconditions to suit, if this was an article 78 proceeding. (2 Anderson, New York Zoning Law and Practice § 26.08, at 375 [3d ed].) Even this may not be enough under the Federal and State Constitutions (see, infra), but it is unnecessary to reach this threshold issue.

. After decision in this case, but before the State Reporter asked for a heavily edited version of this opinion for publication, Natale v Town of Ridgefield. (170 F3d 258 [2d Cir 1999]) was decided, which reversed a jury verdict and dismissed a complaint upon the same reasoning.

. The New York Court of Appeals has not settled the matter either. The formulation of the equal protection rule applicable in the selective enforcement context that the New York Court of Appeals has articulated is as follows: “ ‘there must be not only a showing that the law was not applied to oth *902 ers similarly situated but also that the selective application of the law was deliberately based upon an impermissible standard such as race, religion or some other arbitrary classification’ ”. (People v Blount, 90 NY2d 998, 999 [1997], quoting Matter of 303 W. 42nd St. Corp. v Klein, 46 NY2d 686, 693, supra.) The reference to “classification” thus means that the New York Court of Appeals has yet to consider whether non-class-based individual discrimination is sufficient to state a selective enforcement claim under Supreme Court precedents. This is not to say that the Equal Protection Clause extends in the selective enforcement context “only to those groups accorded heightened scrutiny”. (Stemler v City of Florence, 126 F3d 856, 874 [6th Cir 1997]; cf., Matter of New York Assn. of Convenience Stores v Urbach, 92 NY2d 204, 213-215 [1998] [nonsuspect category of retail sales]; Archbishop Walsh High School v Section VI of N. Y. State Pub. High School Athletic Assn., 88 NY2d 131, 136 [1996].) Plaintiffs complaint, however, cannot be read to allege discrimination on the basis of any arbitrarily defined group- or class-based characteristics.

. Yale Auto Paris (supra) cited Cordeco (supra), but the question whether political motivation to favor another developer is the kind of malice that will satisfy a selective enforcement claim in a nonclass context was not decided, for the reasons stated in the text. If faced with a similar claim, it is doubtful, given the history of Cordeco described above, that it would be sustained. The observation in Albiero v City of Kankakee (122 F3d, supra, at 420) that plaintiff did not “contend, after the fashion of the plaintiff in Esmail v. Macrane * * * that he has been treated differently from other landlords because he is a political opponent of the mayor”, also cannot be taken as an endorsement of a theory of malice based on political motivation to favor another developer. As explained above, Esmail (supra) and its progeny in the Seventh Circuit are really cases of singling out for punishment those who have in some measure succeeded in legal or administrative proceedings in obtaining redress of grievances. Retaliation for the exercise of constitutional rights, something plaintiff does not allege here, has always been a proper basis for selective enforcement relief.